RACHEL MARKHAM, APPELLEE, V. SUPREME COURT, INDE-PENDENT ORDER OF FORESTERS, APPELLANT.

FILED JANUARY 17, 1907. No. 14,633.

Insurance: BENEFICIAL ASSOCIATIONS: PUBLIC POLICY. A rule of a fraternal benefit association, which requires an appeal from the action of its officers vested with authority to allow or reject death claims to the supreme body, whose action thereon is declared to be final, is unreasonable, and is void as against public policy.

APPEAL from the district court for Jefferson county: WILLIAM H. KELLIGAR, JUDGE. *Affirmed.*

*M. A. Hall,* for appellant.

*J. C. Hartigan, contra.*

JACKSON, C.

The defendant has appealed from a judgment in favor of the plaintiff in an action on a life insurance certificate. The appeal involves two questions: First, that the action is prematurely brought; and, second, that the evidence is insufficient to sustain the judgment.

The defendant is a fraternal association with its head-

quarters at Toronto, Canada. Its governing body is called the "Supreme Court" and the rules of government require that it shall meet in regular session triennially or quadrennially in any country in which it has branches, at such time and place therein as may have been selected, as provided by the constitution and laws. The principal officer of the society is the "Chief Ranger," to whom all claims for death benefits are required to be submitted for approval or rejection according to his will. His action is final except upon appeal to an "Executive Council," and the action of the "Executive Council" is final except upon appeal to the "Supreme Court" of the order, whose decision is final upon all questions. Proof of death in this case was submitted to the "Chief Ranger," the claim was by him rejected, and without resorting to the appeals provided for in the law of the order, this action was instituted in the district court for Jefferson county, where the defendant, in answer, set up the provisions referred to as a bar to the right of the plaintiff to proceed in law, and also denied liability, alleging the suicide of the deceased, a risk not assumed.

Provisions somewhat similar in the fundamental laws of other fraternal societies have been sustained, notably by the courts of Michigan; but these decisions are not in harmony with the holdings of this court. The laws of fraternal and mutual societies should be reasonable, and not contrary to public policy. To pursue the remedy provided by the laws of the defendant would require probably three, and possibly four, years to present the claim finally to its "Supreme Court," and for the purpose of the appeal, perhaps, to follow that body into a foreign land, a course that practically amounts to a denial of justice. The provisions are not only unreasonable in substance, but more so in the length of time and expense involved in following them to the legitimate end. The collection of indemnity provided by life insurance should be a speedy and simple process, and it is a praiseworthy fact that most life insurance societies are constantly simplifying

the forms of proof and avenues of collection, an example that might well be followed by all. It is equally true that some of the so-called fraternal societies appear to think it wise to pursue another course.

The provisions of the laws of the defendant society with reference to the finality of its own adjudications involve a principle not unlike that of some insurance so cieties which provide a method of arbitration. Such pro visions have been by this court uniformly held to be void as against public policy, the effect being to deprive courts of their legitimate jurisdiction. *German-American Ins. Co. v. Etherton,* 25 Neb. 505; *Union Ins. Co. v. Barwick,* 36 Neb. 223; *Home Fire Ins. Co. v. Bean,* 42 Neb. 537; *National M. A. Ass'n v. Burr,* 44 Neb. 256. In justice to counsel for appellant we should say that he does not contend that resort might not be had to the courts after the claimant had exhausted her remedy within the order, but after three or four years spent in a fruitless pursuit of the defendant through the operation of its own machinery, followed by the delays incident to an action at law, but little would be left of the $1,000 certificate involved to reward the widow, if in fact she lived to see the end.

Before leaving that branch of the case it would not be amiss, perhaps, to suggest that the denial of liability might well be held to be a waiver of the defense of the failure to appeal. *Wuerfler v. Trustees of Grand Grove, W. O. D.,* 116 Wis. 19.

The question of the sufficiency of the evidence arises over a dispute as to whether the death of the deceased was accidental or was caused by his own acts with suicidal intent. It is not disputed that his death resulted from a gun-shot wound inflicted in the forehead while in his own bedroom. The explosion of the gun aroused his wife and children, who were in the kitchen preparing breakfast. They went to the bedroom, where he was found sitting in a low rocking chair with a gun, a 22-calibre rifle, between his knees, his arms folded across it on his breast. The circumstances testified to by witnesses were

sufficient to have sustained a verdict finding that death was caused by suicide, but it cannot be said that other evidence is of so insufficient a character as to justify setting the verdict aside. Neighbors were called, who assisted in placing the wounded man upon his bed. He was apparently in an unconscious condition. A physician was sent for, whose arrival was delayed from an hour to an hour and a half after the injury. The first indication of consciousness was while he was being examined by the physician. Prior to that time he had uttered no sound. The physician cut the skin down to the bone, and made an examination with his finger to see whether the bullet had gone into the skull. After he had ascertained that fact, and by the use of a probe determined that the bullet had gone through the skull into the brain, he informed the injured man that he was dangerously hurt, and asked him what made him shoot himself. He said: "I didn't shoot myself." The doctor answered: "Yes; you have, here is the gun." The injured man tried to put up his hand, and said: "Where?" The physician said: "Here, and the bullet has gone into your brain and is likely to kill you." Markham answered: "I haven't shot myself, I didn't do it at all." He made that statement several times before he died on the following day. These statements amount to direct evidence as to the purpose to commit suicide, and, together with other circumstances testified to by men skilled in the use of fire arms, were sufficient to justify the submission of the case to the jury.

The admissibility of Markham's statements, however, is assailed. We think, by reason of the facts already stated, that they were properly admitted for two reasons: First, because they appear to be the spontaneous statement of the injured man as soon as he regained consciousness; and, second, because they were made after his condition had been explained to him by the physician and with the knowledge of impending death. The weight to be given to this evidence was a question for the jury.

There is no error in the record, and we recommend that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.