# KNIGHTS OF THE MODERN MACCABEES v. MAYFIELD.

(Court of Civil Appeals of Texas. Dallas. May 4, 1912. Rehearing Denied May 25, 1912.)

1. INSURANCE (§ 805*) — FRATERNAL INSURANCE—ACTIONS—WAIVER.

A fraternal beneficiary association which denied liability on a certificate of membership on account of nonmembership of decedent at the time of his death waived any further proceedings by the beneficiary under the by-laws providing for an appeal from the decision of the executive committee to the great camp.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1987, 1988; Dec. Dig. § 805.*]

2. INSURANCE (§ 740*)—FRATERNAL INSURANCE—ASSESSMENTS—PAYMENT.

Where the by-laws of a fraternal beneficiary association provided that a member who should become permanently disabled to perform any kind of business and who had paid all dues should be entitled to receive annually from the disability benefit fund 10 per cent. of the amount collected on the next life benefit assessment levied after such disability became due, a member who paid assessments in advance until the local tent of which he was a member was suspended, and who then became permanently disabled by reason of illness resulting in his death, was entitled to receive benefits on account of disability, and, where they more than equaled subsequent assessments, the certificate could not be forfeited for nonpayment of assessments.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1887; Dec. Dig. § 740.*]

Appeal from District Court, Hill County; C. M. Smithdeal, Judge.

Action by Mrs. Hattie Lloyd Mayfield against the Knights of the Modern Maccabees. From a judgment for plaintiff, defendant appeals. Affirmed.

Charles L. Black, of Hillsboro, for appellant. Wear & Frazier, of Hillsboro, for appellee.

RAINEY, C. J. Appellee sued the appellant to recover $1,000 on a benefit certificate issued by appellant to W. S. Mayfield, deceased, also to recover $500 as attorney's fees, and $95 due on account of a disability claim. Appellant answered by general and special demurrers and specially that appellee ought not to recover because the certificate had been forfeited for failure to pay dues, and that she had failed to exhaust the remedies of the order before resorting to the court.

The case was tried before the court without a jury and judgment rendered for $1,000 and legal interest from October 7, 1908, from which this appeal is taken.

The evidence shows that appellant, defendant below, is a fraternal benefit mutual

association as defined by the laws of Texas. W. S. Mayfield joined the defendant on January 6, 1906, being a member of Aquilla Tent No. 1,401. He was commander of this tent. His certificate is dated January 17, 1906. His certificate provided that no claim for benefits should be valid against this order which may arise while the member is in default in making payment of any dues or assessments in the manner and within the time required by the laws of the order. It further provided that the laws of the order and the amendments thereto should be made a part of the certificate. He was a member in class 1 and held certificate for $1,000 in which the plaintiff was named as beneficiary. He died October 7, 1908. The rate of assessment to be paid by members in class 1 with Mayfield was the sum of $1.25. Notice of the assessment is required to be made by the great record keeper by publishing such notice in the official organ and mailing a copy of same to the member at his last-known address, and it is provided by the laws that this shall be sufficient notice to the member of his liability for the assessments. Section 197 of the laws provides in substance that an assessment being due and notice thereof given the members through the official organ, the finance keeper shall immediately proceed to collect the same, and each benefit member in class 1 shall pay such assessment to the finance keeper during the calendar month in which same is due and payable as appears in the official organ, and that any member failing to pay such assessment within said time shall stand suspended from all rights and benefits of a benefit member of the order. Assessment No. 148 became due from the members with July 1st as the last date for payment. W. S. Mayfield paid his to H. M. Hill in time, or rather Hill paid it for Mayfield out of his own funds, but did not collect from all the members of the tent, and did not send it off to the home office in time, because, he says, he was unable to get the signature of the commander of the tent to his report, and thought this necessary. Hill had been paying the assessments for Mayfield and said that he would have paid Nos. 149 and 150 had he known that he had authority to collect money after the suspension of the tent. Assessment No. 149 became due from the members July 1, 1908, with July 31st as last date for payment; and assessment No. 150 became due from the members August 2, 1908, with August 31st as last date for payment. These two assessments were duly made as provided by the laws of the order, and notice thereof duly mailed to Mayfield, at Aquilla, Tex., as provided by the laws. H. M. Hill was the local finance keeper of Aquilla Tent, and was a member of the tent, and along with the other members of the tent was suspended because of the nonpayment of assessment No. 148, and further

was suspended as an individual member for failure to pay assessments Nos. 149 and 150, and so stood suspended on and after August 1, 1908, and has never been reinstated in the order. The finance keeper is elected from the members by the members. On August 19, 1908, A. M. Slay, great record keeper of the order, notified Mayfield, as tent commander, that his tent stood suspended for nonpayment of assessment No. 148. On receipt of this letter Mayfield's brother-in-law tendered on or about August 22, 1908, sufficient funds to H. M. Hill to pay 149 and 150. This was after Hill's suspension, as stated above. Assessments Nos. 149 and 150 were never paid at any time or tendered for payment to A. M. Slay or any other officer of the grand lodge. On or about September 21, 1908, Mayfield forwarded to A. M. Slay his receipt for No. 148 and received a letter from Slay dated of that date stating to him that he would have to pay 149 and 150 and also furnish health certificate. Under laws of the order, a member had 30 days after suspension in which to be reinstated by paying his dues without health certificate. If more than 30 days after suspension, then he must pay the dues and furnish health certificate. Assessment No. · 149 became finally due July 31, 1908. And Mayfield, not having paid or tendered same for payment prior thereto, stood suspended under section 197 of the laws on August 1, 1908. He had all of the month of August, 1908, to pay 149 and be reinstated under section 199 without health certificate. After having made tender to Hill on August 22, 1908, he had remainder of that month to send money to the home office and be reinstated without health certificate under section 199.

Section 181 of the laws provides that where whole tent is suspended, but some of the members have paid their dues to the local officer, and hold his receipt, then they shall send it in and pay to the great record keeper all assessments not remitted for them by the local officers, and that this action shall keep their certificates in full force. From July 20, 1908, to time of his death, Mayfield was sick in bed and unable to attend to any business of any character, delirious, etc. He was afflicted with typhoid fever and this caused his death. Section 118 of the laws provides that a member holding certificate in class 1, who shall become totally and permanently disabled from any cause, shall be entitled to participation in a disability fund. Section 120 provides that any member desiring to obtain benefits for total and permanent disability shall file his claim therefor with the great record keeper upon blank prescribed by the executive committee, accompanied by the affidavits of two reputable physicians showing such disability to be total and permanent as required in section 118, and no such claim shall be al-

lowed or paid until approved by the great medical examiner, provided further that it shall not be allowed until 90 days after presentment and then only upon satisfactory proof of such continued disability. It is agreed no notice of disability other than shown by the statement of facts was made to the defendant. No notice of such claim is shown in the statement of facts. It is provided in the certificate issued to Mayfield that no officer or member of any subordinate body, or any officer or agent of the Knights of the Modern Maccabees, has any right or authority to waive a strict compliance with any of the provisions of the laws of the order relative to the payment of dues and assessments as they may be called or fixed from time to time. Also that no claim shall be valid arising while the member is in default in paying any assessment, whether the default arises from his own negligence, or from relying upon any assurances to him by any officer or agent of the order, or any officer, agent, practice, or custom of any subordinate order of this body. Also provided in section 126 that officers of subordinate tents should be agents of the member, and that order would in no event be liable for fault or negligence of officer of a tent. Section 118 provides that a member now or hereafter placed on the disability list, whether total and permanent, or old age disability, shall continue to pay all assessments, per capita tax, and dues theretofore paid by him until he has paid 80 per cent. of the amount of his benefit certificate, when payment of assessments shall cease. Section 44 of the laws provides that the great record keeper shall keep on hand at all times to the credit of the life benefit fund at least one full assessment on the benefit membership over and above the amount provided to be set aside into the emergency fund from the monthly contribution of the members in class 2, and all pending claims against the order for the payment of current losses, and he shall from time to time make such assessment calls upon the membership of class 1 as may be necessary to secure such amount on hand.

Appellant contends that appellee failed to comply with the laws of the order in not exhausting the remedies provided for the payment of certificates, which is a condition precedent, before resorting to the courts. Section 63 of the by-laws of the appellant provides an executive committee to pass upon all death claims, and section 70 provides: "The executive committee shall decide on all death claims referred to it, and if in its judgment any such claim is not on its face a valid one, it shall notify the beneficiary or beneficiaries of the deceased member thereof, and give them or their attorneys an opportunity to appear before such committee within sixty days thereafter, and present such evidence as they may have to establish the justness of said claim, and the said committee shall try, hear and decide upon the justness or validity of such claim, and such decision shall be binding and final, unless an appeal is taken to the great camp. The notice of the appeal from the decision of the committee must be filed with the great record keeper within sixty days thereafter. The decision of the great camp in all such cases shall be final, and no suit in law or equity shall be commenced or maintained by any member or beneficiary against the order until every remedy provided by its laws has been exhausted."

Proof of the death of W. S. Mayfield was duly made and the claim rejected by the executive committee, as shown by its finding as follows: "In the matter of the death claim of William S. Mayfield, Aquilla, Texas, it appears he became a member of the order on the 6th of January, 1906; that he held benefit certificate No. 207715 for $1,000 in class 1, in which Hattie L. Mayfield, wife, was designated as beneficiary; that he died on the 7th day of October, 1908; that Aquilla Tent No. 1401, Aquilla, Texas, to which said William S. Mayfield was admitted, stands suspended on the records in the office of the great record keeper under date of August 1, 1908, for nonpayment of assessment No. 148; that W. S. Mayfield paid No. 148, for which the tent as a body stand suspended, but did not pay assessments Nos. 149 and 150 respectively, both of which became due and payable, and for which said William S. Mayfield was liable before the death of said William Mayfield; that William S. Mayfield was not a member in good standing at the time of his death; that the claim on its face is not a valid one; that Hattie L. Mayfield, widow and claimant, is not entitled to any benefits whatever."

[1] Notice of said finding was duly given to Mrs. Mayfield; she took no further steps to establish her claim under the rules of the order, but resorted to the courts by bringing this suit. Appellant, having denied liability on account of nonmembership of the deceased at the time of his death, waived any further proceedings under its by-laws by the beneficiary. Fraternity v. Mulkey, 130 S. W. 242. The by-laws provide for an appeal from the decision of the executive committee to the great camp, and that the decision of the great camp shall be final. This makes appellant, one of the parties, judge or arbitrator in its own case, a policy that the law does not favor. Brotherhood v. Greaser, 108 Ill. App. 598; Brown v. I. O. F., 66 App. Div. 259, 72 N. Y. Supp. 806; Wuerfler v. Grand Grove, 116 Wis. 19, 92 N. W. 433, 96 Am. St. Rep. 940; Markham v. I. O. F., 78 Neb. 295, 110 N. W. 638; Kane v. Maccabees, 113 Mo. App. 104, 87 S. W. 547; McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384.

[2] The second assignment of error is to the effect that the judgment rendered is not supported by the evidence.

W. S. Mayfield was commander of Aquilla Tent, which tent was suspended August 1, 1908, by reason of the tent having failed to pay assessment No. 148. This assessment was paid by Mayfield and received by the great record keeper to whom dues could be paid by suspended members, who stood suspended by the suspension of the tent, the payment of which prevents a permanent suspension from the fraternity and prevents a forfeiture of the benefit certificate. But it is claimed by appellant that assessments Nos. 149 and 150 were not paid by Mayfield, and that by virtue of the by-laws he stood suspended at the time of his death. Assessment No. 149 became finally due July 31, 1908, and assessment No. 150 became finally due August 31, 1908. It is true these assessments were never paid by Mayfield for the reason that on July 20, 1908, he was taken seriously ill with typhoid fever, became unconscious, and totally disabled to know anything and attend to business, and so remained until he died on the 7th day of October, 1908. Section 118 of the by-laws of the order provides: "A member holding a benefit certificate who shall become totally and permanently disabled from any cause not the fault of his own illegal act to perform any kind of labor or business, and who has paid all legal dues and assessments, shall be entitled to receive annually from the disability benefit fund the sum of 10 per cent. of the amount collected by the great record keeper on the next life benefit assessment levied after such disability becomes due and payable, in semiannual installments, not exceeding, however, one-twentieth part of his certificate." By the provisions of this by-law Mayfield was entitled to receive benefits on account of his disability, which more than equaled the assessments Nos. 149 and 150, which amounted to $1.25 each or a total of $2.50. As the sick benefits were accruing during his sickness, and more than a sufficiency had accrued before the time of final payment for Nos. 149 and 150, we conclude that the order held in its hands a sum sufficient to cover said assessment, which prevented a forfeiture of his benefit certificate. Union v. Stahl, 126 S. W. 920. Again, it is not shown that the appellant had exhausted the full amount paid in by Mayfield on the assessments for which he was liable. Assessments were collected in advance in order that enough money should be on hand to promptly liquidate death claims. When Mayfield was initiated in the order, he had to pay an assessment in advance, and he paid regularly till his tent was suspended, and it was the duty of appellant to show that it had paid out all this fund on claims for which he was legally liable before the benefit certificate could be forfeited. This it did not do. It also devolved upon appellant to show that the assessments for which Mayfield had been suspended had been legally made.

If the appellant was owing anything to Mayfield on account of sick benefits, or had funds in its hands from any source of his sufficient to cover the assessments against him, it could not forfeit the certificate.

The judgment is affirmed.